1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  EMILIO VARANINI, State Bar No. 163952
   KARLI EISENBERG, State Bar No. 281923
3  Supervising Deputy Attorneys General
   DAVID HOUSKA, State Bar No. 295918
4  Deputy Attorney General
     455 Golden Gate Ave.
5    Suite 11000
     San Francisco, CA 94102
6    E-mail:  david.houska@doj.ca.gov
   *Attorneys for Defendant Rob Bonta, in his official*
7  *capacity as Attorney General of the State of*
   *California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASSOCIATION FOR ACCESSIBLE MEDICINES,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,**<br><br>Defendant. | 2:20-cv-01708-TLN-DB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY THE PRELIMINARY INJUNCTION**<br><br>Date:         February 10, 2022<br>Time:         2 p.m.<br>Courtroom:  2<br>Judge:        The Honorable Troy L. Nunley<br>Action Filed: August 25, 2020 |

## INTRODUCTION

Plaintiff Association for Accessible Medicines ("AAM") concedes through silence that the preliminary injunction is overbroad as written. Nor does AAM contest that an overbroad injunction satisfies the standard for "clear error." Indeed, AAM's Opposition never mentions—let alone engages with—the relevant legal standard for how far an injunction may reach. Accordingly, the question is no longer whether the Court should modify its prior order: it is to what degree the injunction must be narrowed.

As to this question, the caselaw is clear that California may enforce its antitrust laws against agreements which artificially inflate the price of in state transactions. Accordingly, the Court should modify the injunction such that it permits the Attorney General to enforce AB 824 against any agreements, no matter where they were formulated or perfected, so long as they were made "in connection with the sale of a pharmaceutical product" in California. Cal. Health & Saf. Code § 134002(a)(1). At a minimum, the injunction should be modified to allow the Attorney General to enforce AB 824 as to in-state agreements, especially given that as AAM has conceded this point.

## ARGUMENT

**In State Sales.** AAM's primary argument against narrowing the injunction is that *any* application of AB 824 to out of state settlements—linked to California sales or otherwise—would violate the Commerce Clause. Opp. at 2 ("it is the patent settlement, and *not* any sales of drugs, that violates AB 824" (emphasis original)). This fundamentally misconstrues AB 824 however: the statute does not target all patent settlements, but only those made "in connection with the sale of a pharmaceutical product." Cal. Health & Saf. Code § 134002(a)(1). And, as the cases on which AAM relies indicate: the dormant Commerce Clause permits a state to regulate in-state sales, including by "seek[ing] lower prices for its residents." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 334 (1989) (describing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986)). Critically, such regulation may permissibly extend to extraterritorial economic activity so long as it is tied to in-state transactions because the relevant conduct does not occur

*wholly* outside the state's borders. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 993-94 (9th Cir. 2000) (California could target anti-competitive activity in Wisconsin which resulted in sales at artificial prices in California). Holding otherwise would invite companies to evade anti-trust enforcement by simply agreeing in one state to engage in illegal conduct in another. *Id.* And more fundamentally, such market distortions are not incidental "effects" of such agreements, Opp. at 2; rather, the agreements obligate generic producers not to compete *in the California market*. An agreement which governs or regulates commercial activity in California is not wholly extraterritorial merely because it was executed in another state, and may be permissibly targeted under the Commerce Clause. *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003) ("Applying California law to a contract that is performed only partially outside of California does not violate the Commerce Clause.").

*Knevelbaard*—which AAM entirely fails to address, or even cite in its opposition—illustrates this point perfectly. There, the Ninth Circuit considered a claim brought under the Cartwright Act by California milk producers against cheese makers. 232 F.3d at 982.[1] The plaintiffs alleged that the cheese makers had created an organization called the National Cheese Exchange (NCE) which used bids for bulk purchases to artificially depress the price of milk. *Id.* The defendant cheese makers argued that the dormant Commerce Clause barred the Cartwright Act claim because all of the relevant bids and the NCE itself were located in Wisconsin. *Id.* at 993. The Ninth Circuit rejected this argument, concluding that the targeted conduct occurred "not only in Wisconsin, where NCE was located, but in California, *where the cheese makers allegedly purchased milk at prices artificially depressed by their combination in restraint of trade*." *Id.* at 994 (emphasis added); *see also Edwards v. Nat'l Milk Producers Federation*, 2014 WL 4643639, at *7 (N.D. Cal. Sep. 16, 2014) ("the commerce clause does not bar application of California antitrust law to out-of-state anticompetitive conduct that causes injury in California") (quoting *RLH Indus., Inc. v. SBC Comms, Inc.*, 133 Cal. App. 4th 1277, 1281-82 (2005)). Accordingly,

---

[1] The Cartwright Act is California's primary state level antitrust statute. Cal. Bus. & Prof. Code §§ 16700 *et. seq.*

the Ninth Circuit has squarely recognized that a state has authority to extend its application of state antitrust law to out-of-state conduct that distorts in-state prices.

AAM relies on *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1326 (9th Cir. 2015), but this decision only undermines Defendant's position. There, the Court considered a California statute that "regulate[d] [both] out-of-state and in-state sales of fine art." *Id.* at 1326. The Court held that when a fine art sale occurred entirely outside of California—such as when the artist was from North Dakota and the transaction occurred in New York, with the only connection to California being that the seller was a California resident—the act violated the dormant Commerce Clause. *Id.* at 1323-24. The Court did not strike down the challenged statute entirely; instead, it held that the law may be permissibly applied whenever the relevant sale took place in California. *Id.* at 1326. This mirrors how the Court should modify the injunction in this case: that the Court leave standing the portion of the statute that regulates the state's own market. Stated differently, the Court should permit AB 824 to be applied to settlements made in connection with California sales because such conduct would not occur wholly beyond California's borders.

Regulation of in-state sales only becomes impermissibly extraterritorial when the law control sales in *other* States. *Healy*, 491 U.S. 324, 334 (1989); *see also id.* at 338 ("[T]he Connecticut statute has the extraterritorial effect, condemned in *Brown–Forman,* of preventing brewers from undertaking competitive pricing in Massachusetts."). That would not be the case here if the Court permits California to enforce AB 824 against settlements that cover the sale of a pharmaceutical product in California. The reason is simple: unlike the laws invalidated in *Healy* and *Brown Forman*—where the statutes made it impossible to disaggregate the product market in different states—drug manufacturers would be free to simply exclude California sales from settlement agreements.

At bottom, AAM's objection to this result seems to be that allowing AB 824 to be enforced against settlements that cover the sale of drugs in California would complicate their ability to settle litigation. Opp. at 1. But this has no bearing on AAM's extraterritorial challenge under the dormant Commerce Clause. Indeed, the dormant Commerce Clause does not protect a company's choice to enter into nationwide settlement agreements. *Exxon Corp. v. Governor of Md.*, 437

3

U.S. 117, 127 (1978) (holding that the dormant Commerce Clause does not protect "the particular structure or methods of operation in a retail market"); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 949 (9th Cir. 2013) ("the dormant Commerce Clause does not . . . guarantee Plaintiffs their preferred method of operation."). AAM cannot artificially manufacture a dormant Commerce Clause problem based on its members' disinclination to carve California sales out of relevant settlement agreements. Unlike the laws invalidated in *Healy* and *Brown-Forman*, AB 824 does not make "it impossible" for a manufacturer to engage in its preferred conduct—including entering into its preferred settlement agreement—concerning sales in any other state. *Healy*, 491 U.S. at 333.

Given this Ninth Circuit precedent, and the Supreme Court's long-standing recognition that states may regulate in-state sales, the Court should modify the injunction to permit the Attorney General to enforce AB 824 against settlement agreements made "in connection with the sale of a pharmaceutical product" in California. Cal. Health & Saf. Code § 134002(a)(1).

**In State Settlement Agreements.** AAM does not dispute that the dormant Commerce Clause permits California to enforce AB 824 against settlement agreements negotiated, executed, or entered within its borders. *McCoy v. Cty. of Vallejo*, 2021 WL 2661757, at *4 (E.D. Cal. June 29, 2021) ("Plaintiff fails to respond to this argument and therefore concedes it through silence"); *cf* Compl. ¶ 85 ("AB 824 violates the Commerce Clause as applied to settlement agreements that were *not* negotiated, completed, or entered in California" (emphasis added)). Despite this concession, the Court's order "enjoin[s] enforcement of AB 824" under any circumstances. Dkt. No. 42 (Order) at 18. Because "an overbroad injunction is an abuse of discretion," the injunction must be narrowed to fit AAM's actual Commerce Clause challenge, and to permit California to enforce AB 824 against in state settlements. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009). The mere fact that AAM has brought other, unresolved claims, is no basis to maintain the injunction on the current record since "[i]njunctive relief must be tailored to remedy the *specific* harm alleged." *Id.* (emphasis added).

In short, the Court should narrow the injunction to only prohibit AB 824 from being enforced where an agreement was not negotiated, executed, or entered in California and there are

no sales in California. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006) (where "only a few applications of [the challenged statute] would present a constitutional problem," lower court erred by enjoining the law in its entirety).

**Parties Covered.** It appears the Attorney General and AAM are partially talking past one another on whom the injunction should cover. The Attorney General asked the Court to specify the parties covered by the injunction because the original order appeared on its face to prohibit AB 824 from being enforced against *anyone*. Order at 18. As AAM implicitly acknowledges this would be overbroad given they have only brought an as-applied challenge. To be sure, California does not object to the injunction to the extent it covers both AAM as an organization and its member entities. Opp. at 2-3. Beyond that, the injunction should not extend any further. AAM has provided no analysis or reason why its agents or licensees must be included in any injunction order. Opp. at 3-4.

## CONCLUSION

The Attorney General respectfully requests that the Court modify the injunction to allow him to enforce AB 824 as applied to agreements made in connection with California sales, or at a minimum, to agreements entered into in California.

Dated: February 3, 2022

Respectfully Submitted,

ROB BONTA
Attorney General of California
EMILIO VARANINI
KARLI EISENBERG
Supervising Deputy Attorneys General


*/s/ David Houska*
DAVID HOUSKA
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

# CERTIFICATE OF SERVICE

Case Name:   **AAM v. Becerra**            No.   **2:20-cv-01708-TLN-DB**

I hereby certify that on February 3, 2022, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY THE PRELIMINARY INJUNCTION

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on February 3, 2022, at Los Angeles, California.

|  |  |
|---|---|
| Naomi R. Bolivar | /s/ Naomi Bolivar |
| Declarant | Signature |

SA2020303019
64861505.docx